## FRANCIS X. BUSHMAN *v.* JOSEPHINE F. BUSHMAN.

[No. 43, January Term, 1929.]

*Decided April 2nd, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Mason P. Morfit,* with whom were *Sappington & Morfit* on the brief, for the appellant.

*Robert Biggs* and *G. Everett Siebert,* for the appellee.

PARKE, J., delivered the opinion of the Court.

On July 26th, 1918, Josephine F. Bushman, plaintiff, obtained an absolute divorce from Francis X. Bushman, defendant, in the Circuit Court for Baltimore County, sitting as a court of equity. Before the cause was submitted for decree, the parties agreed that it should not be necessary to take testimony in reference to counsel fees, alimony and the custody of their five infant children, but that it would be proper and reasonable for a decree for absolute divorce to provide:

1. That the defendant pay to the plaintiff the sum of $40,000 as alimony, in four equal installments, the first, upon the passage of the decree, the second, within eight months, the third, within fourteen months, and the fourth, within twenty months thereafter; and all of the deferred payments to bear interest at the rate of five per centum per annum from the date of the decree, and to be secured to the satisfaction of the solicitors for the plaintiff; and that the payments when made are to be in full satisfaction and discharge for all claim for alimony and of any other claim of the plaintiff against the defendant; and that, after the signing of the decree, the plaintiff should have no further right, interest, or title in any property now, then, or thereafter belonging to the defendant.

2. That custody of the five infant children be awarded the plaintiff, with the right of the defendant to have a special period of custody every year and to have children visit him at other times during the year, provided the aggregate length of these visits shall not exceed two weeks in any one year.

3. That the defendant would furnish and equip for housekeeping purposes not more than eight rooms of a house to be selected and rented by the plaintiff as a home for herself and children; and that the title to this furniture and equipment should be in the plaintiff.

4. That the defendant would pay the plaintiff the sum of $4,000 yearly for the maintenance and support of the children, and that he would, also, pay the tuition and expenses of the children at school, together with all bills for doctors, surgeons, medicines, or dentists; and that he should provide suitable clothing for said children during their minority or until they should respectively marry. The annual payment was payable in monthly installments, subject to an abatement of $700 whenever any of said children should attain the age of twenty-five years, marry, or cease to live with the plaintiff, and when all of said children shall have become twenty-five years of age, or shall have married, or shall have ceased to live with the plaintiff, then the whole

annual payment of $4,000 to the plaintiff shall cease, subject, however, to the provision that the court retain jurisdiction for the purpose of entertaining and acting upon any petition which might thereafter be filed by the defendant asking for a diminution of the amount of payment herein provided for in the event of a change of circumstances, whereby he would no longer be reasonably able to make payments to the extent provided for the children.

5. That the defendant pay the plaintiff's solicitors the sum of $3,000 as counsel fees upon the passage of the decree, and all the costs.

This agreement was signed by both the plaintiff and the defendant on February 15th, 1918, and was filed in the cause on July 20th, 1918, the day the decree awarding an absolute divorce was passed and filed. The decree incorporated all the terms of the agreement with meticulous adherence to its language, except in these particulars: (1) the decree provided that the interest should run on the $40,000 from the date of the decree and should be paid in equal monthly installments, which would be abated, from time to time, to the extent of the payments made; (2) the decree omitted the provisions that the deferred payments were to be secured to the satisfaction of the solicitors for the plaintiff and that the defendant furnish eight rooms of a house for the benefit of the plaintiff; and (3) the decree provided that the $4,000 for the support and maintenance of the children should be paid in monthly installments at the beginning of every month. *Emerson v. Emerson,* 120 Md. 584, 586-587.

The record discloses that the defendant partly performed the decree; but, on October 16th, 1928, the plaintiff filed a petition in the cause charging that the defendant had "wilfully failed, refused and neglected to pay the said alimony, and to pay the moneys necessary to support his children, and is now in arrears through the said decree in a sum of approximately $60,000," and asked that a writ of attachment for contempt be issued against the said Francis X. Bushman requiring him to be and appear in court to show cause why he should not be punished for contempt. The court directed

the writ to issue, and, upon being attached, the defendant demurred to the petition, but the court overruled the demurrer, and this appeal was then taken.

The demurrer raised the question whether the court had jurisdiction to enforce payment of the sums awarded by the decree by an order committing the defendant to prison for for contempt of court. The answer depends upon whether the decree is for alimony, because alimony does not constitute a debt within the meaning of that term in the constitutional prohibition of imprisonment for debt. Constitution of Maryland, art. 3, sec. 38; *Dickey v. Dickey,* 154 Md. 675, 681.

The original bill of complaint was for a divorce *a mensa et thoro* on the ground of cruelty, and the agreement mentioned was subject to the condition precedent that the plaintiff should amend the bill to one praying for an absolute divorce. This was done on February 25th, 1918, and is a suspicious circumstance; but, in the absence of any other testimony, and in view of the length of time since the passage of the decree, and its complete acceptance by the parties, the court could not now find, on this single equivocal fact, that the decree was induced by the collusion of the parties, and should regard it as having been made in an effort to secure proper provisions for the maintenance of the wife, who was the innocent party, and for the support of the children because of the inevitable and imminent dissolution of the marital relation on account of an existing statutory basis for a divorce *a vinculo matrimonii.*

The decree makes separate and distinct provisions for the wife and for the children. The obligation of the father to support the infant offspring may be a factor in determining the amount of alimony which should properly be awarded the wife where she has been awarded their custody, but the father's primary liability to support the children is governed by different principles; and, although provisions for the support of the children and the maintenance of the wife are commonly embraced in the same decree, those for the support of the children are not alimony. There is no confusion of the husband's two liabilities in the present decree, since the

support for the children and the maintenance for the wife are specifically and separately provided for in distinct paragraphs of the decree. Code, art. 16, sec. 39; *Hood v. Hood,* 138 Md. 355, 364, 365.

The failure of the defendant to pay as decreed the plaintiff the specified annual sum for the support of the children, and to discharge his other pecuniary obligations in their regard, is not a declination to pay alimony but a refusal to comply with those terms of the decree which imposed upon the defendant an obligation in the nature of a debt. So that part of the decree relating to the support of the children is within the protection of the constitutional inhibition against imprisonment for debt, and obedience to this part of the decree cannot be enforced by imprisonment for contempt of court.

The remaining inquiry is whether the provisions of the decree for the benefit of the wife are alimony. Aside from the right of the plaintiff to an absolute divorce, the decree declared that it is based upon the agreement of the parties, and the assent in open court of the defendant. Accordingly, it was adjudged that the defendant pay unto the plaintiff as alimony the sum of $40,000, with interest thereon from the date of the decree at the rate of five per centum per annum, payable in equal monthly installments on the first day of every month, beginning with August 1st, 1918, but subject to abatements to the extent of any previous payments by the defendant on account of the principal indebtedness, which was to be discharged by $10,000 being paid upon the passage of the decree, and a like sum within eight months; another like sum within fourteen months; and the fourth and final like sum within twenty months, accounting in every instance from the day of the passage of the decree.

The decree, in accordance with the agreement, provided that when said payments are made they shall be "in full satisfaction and discharge of any and all claims by way of alimony or any other claim of the plaintiff against the defendant and the said plaintiff shall have after the signing

of this decree no further right, interest or title in any property now or hereafter belonging to the defendant."

Alimony is a periodical allowance for the wife's support when she is separated or divorced from her husband, and, so, is in the form of a sum of money to be paid from time to time out of the property or wages of the husband. It continues during the joint lives of the husband and wife, or so long as they live separate and apart. In the absence of special agreement of the parties or of statutory authorization the court may not decree alimony in gross. *Infra.*

This rule arose under the ecclesiastical courts of England, whose jurisdiction was limited to divorces from bed and board. 2 *Schouler on Marriage, etc.* (6th Ed.), sec. 1749. Now the jurisdiction of the English courts extends to granting decrees of divorce from the bonds of matrimony, but there had to be an express statutory grant of authority before the courts in England acquired the alternative power of ordering the payment of a gross sum by way of permanent maintenance. *Twentyman v. Twentyman* [1903], L. R., Probate 86; Matrimonial Causes Act 1857 (20 & 21 Vic. c. 85), sec. 32. So, in Maryland, it is by virtue of a statute that alimony may be awarded upon a decree for an absolute divorce. *Emerson v. Emerson,* 120 Md. 584, 590; Code, art. 16, secs. 14, 15; *J. G. v. H. G.,* 33 Md. 401, 406-407; *Fisher v. Fisher,* 93 Md. 298, 303; *Polley v. Polley,* 128 Md. 60, 62, 63. In *Emerson v. Emerson, supra,* it was expressly stated: "The act makes no difference whatever between alimony upon a decree *a mensa* and upon a decree *a vinculo.* We think it is clear, then, that the act providing for alimony upon this decree, new to the courts, was intended to provide for alimony of the same character and limitations as the alimony the courts had for so long dealt with. In a great many states, statutes provide that the court shall award to the wife by way of alimony upon a decree for divorce a portion of the property held by the husband and wife or a sum of money in lieu of property, to be absolutely hers. Although this is designated as alimony, it is totally different from the theory of alimony as recognized in Maryland. One is a division of property,

while the other is the maintenance of the wife out of the income of the husband." Pages 590, 591.

This is a clear and pertinent construction of the Maryland statute, empowering the allowance of permanent alimony in a decree dissolving the bond of marriage. Whatever may be the statutory rule and construction in other jurisdictions, in this state the allowance of alimony in cases of separation or either kind of divorce is of the nature and in the form according to the practice derived from the English ecclesiastical courts. The rule is thus stated in *Bishop on Marriage and Divorce*: "The court cannot decree to the wife as alimony, a gross sum, or absolute title in specific property, or a sale of a part of the husband's estate for her use. But we have statutes, to be explained in future chapters, allowing this sort of provision, and sometimes it is termed alimony." Sections 835, 834, 1054, 1045, 1051; *Calame v. Calame*, 25 N. J. Eq. 548.

If a gross sum were allowable in the discretion of the court as a substitute for regular payments, the gross sum would represent the capitalization of a proportion of the husband's income; and a compliance with the decree would immediately reduce his principal or property by that amount, and transfer a specific proportion of the husband's estate absolutely to the wife. 2 *Bishop on Marriage and Divorce*, secs. 1030-1036; *Ricketts v. Ricketts*, 4 Gill 105, 109. In the event of her death a day later, the lump sum, undiminished by any appropriation to her maintenance, would pass to her personal representatives for distribution as part of her estate; and, if she lived, it was her absolute property to do with as she liked. In no true sense would the award of a gross sum be alimony, since it could neither be increased nor be reduced according to the exigency of circumstances; nor would the obligation to pay it as decreed be affected by the death of either the husband or the wife. *Emerson v. Emerson*, 120 Md. 584, 594, 595; *Clarke v. Clarke*, 149 Md. 590, 592, 593; *Winchester v. Winchester*, 138 Md. 95, 97; *Braecklein v. Braecklein*, 136 Md. 33, 38; *Dickey v. Dickey*, 154 Md. 675, 678, 679; *Wallingsford v. Wallingsford*, 6 H. & J. 485, 489.

Although payment of the alimony cannot be a discharge or satisfaction of any other demand, yet in the case at bar the payment of the specified gross sum decreed is stated to be "in full satisfaction and discharge of any and all claims by way of alimony or any other claim of the plaintiff against the defendant." As the gross sum directed to be paid to the wife and the terms and effect of the payment are not alimony within the meaning of the statute, these terms could not have been incorporated in the decree of absolute divorce, if the parties had not so previously agreed, on the authority of *Emerson v. Emerson* (1913), 120 Md. 584, 598, 599; *Newbold v. Newbold* (1918), 133 Md. 170. And see *Dickey v. Dickey,* 154 Md. 675, 678, 679; *Miller's Eq. Proc.,* sec. 269; 2 *Bishop on Marriage & Divorce,* sec. 885. It is only when the decree is for the payment of alimony that it may be enforced by attachment of the person for contempt and the imprisonment of the defendant, unless he can purge himself of the contempt by paying the alimony or by showing he has neither the estate nor the ability to pay. *Dickey v. Dickey,* 154 Md. 675, 681; *Mann v. Mann,* 144 Md. 518, 524; *McCurley v. McCurley,* 60 Md. 185, 189; *Feigley v. Feigley,* 7 Md. 537, 563; *Miller's Eq. Proc.,* sec. 244, pp. 303, 304, note 4; 2 *Bishop on Marriage & Divorce,* secs. 1092, 837; *Schouler on Marriage & Divorce* (6th Ed.), secs. 1843, 1850, 1853, 1851, p. 2005.

Since the decree in this case was not for alimony within the meaning of the statute, but was for the payment of a specified sum of money in accordance with the agreement of the parties, the defendant could not be punished by imprisonment because of his refusal to pay the money as decreed. Section 38 of article 3 of the Maryland Constitution; *Dickey v. Dickey,* 154 Md. 681. So, the chancellor was in error in overruling the demurrer to plaintiff's petition, but, as section 205 of article 16 of the Code affords the remedies available to the plaintiff, the proceedings will be remanded with leave to the plaintiff to apply, within such time as the chancellor shall prescribe on the remand of this cause, for permission to amend her petition of October 16th, 1928, so as to bring

it within one of the remedies provided in section 205 of article 16 of the Code.

> *Order of December 3rd, 1928, reversed with costs to the appellant, and cause remanded for further proceedings in conformity with this opinion, and with leave to plaintiff to amend so as to proceed under section 205 of article 16 of the Code.*