## LANGVILLE v. LANGVILLE

[No. 192, October Term, 1947.]

104

*Decided June 17, 1948.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Joseph H. Colvin* for the appellant.

*Louis M. Strauss* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Anna Langville, appellant here, was granted a divorce *a vinculo matrimonii* from her husband, John Langville, on April 20, 1943, by the Circuit Court No. 2 of Baltimore City. The court awarded the custody of a fourteen year old child to her, and ordered that the defendant pay $8 per week "through the Probation Department of the Supreme Bench" for the support of said child, until the child should become self-supporting, "all subject to the further order of the court in the premises."

It was further ordered that the defendant pay $90 "representing accrued arrearages due for the support of said child", a counsel fee of $50 to the solicitor for the complainant, and costs.

At the time of the institution of the divorce proceedings John Langville was a resident of the District of Columbia. A stipulation dated July 15, 1942 was filed in the case, signed by counsel for the respective parties, which provided: "In the event a decree is granted by the Circuit Court No. 2 of Baltimore City divorcing the parties hereto, it is agreed:

1. That the said Anna Langville * * * shall have the custody of the child of the parties, Pauline Langville * * *.

2. That the said John Langville hereby agrees to pay eight dollars per week to the said Anna Langville for the support and maintenance of his aforesaid child, until said child becomes self-supporting.

3. That the said John Langville hereby agrees to pay to Anna Langville within thirty days from date hereof the sum of $90.00 representing the accrued arrearage due for the support of Pauline Langville.

4. That the said John Langville shall pay all the costs of said proceeding which shall include $50.00 attorney's fees for the said Anna Langville.

5. Power and authority for the acceptance of process in the aforestated action is hereby expressly conferred upon Joseph Loeffler, Attorney at Law, 1019 Fidelity Building, Baltimore, Maryland in whch event said John Langville agrees to be binding upon himself as if personal service had been made upon him, the said John Langville.

Stipulations herein agreed upon by the parties hereto shall be binding only in the event a decree is granted by the Circuit Court No. 2 of Baltimore City as a result of the proceedings herein, divorcing the parties hereto and shall not bind them for any other purpose."

On January 23, 1947, counsel for Mrs. Langville filed a non-resident attachment in the Circuit Court for Anne

Arundel County against John Langville, in which she made oath that John Langville was indebted to her in the sum of $383 representing the balance due under the above mentioned stipulation agreement and decree. A copy of the agreement and a certified copy of the decree were attached to the affidavit and narr. The narr recited that the claim was "itemized in voucher in short note attached hereto and made a part hereof", but no voucher appears in the record. A writ of attachment was duly issued, and the Sheriff attached a motor boat in the possession of Samuel Langville, and made his return. Copies of the short note were posted on the boat, placed in the hands of the garnishee, filed with the Clerk of Court, posted at the Court House door and mailed to the defendant in Washington, D. C. Thereupon an action was docketed against the garnishee. No pleas to the action were filed either by the defendant or the garnishee. On May 13, 1947, a motion for condemnation nisi was filed in the original action and granted. On June 10, 1947, upon waiver of jury trial by the plaintiff, the Court found a verdict against the defendant for the sum of $383 with interest from date and costs. No judgment was entered upon this verdict. No motion was filed in the garnishee case. On June 17, 1947, the plaintiff filed an order for a writ of *fieri facias* upon the supposed judgment, which was duly issued. The Sheriff made a levy under this writ on July 15, 1947, but did not advertise the sale.

On August 21, 1947, the plaintiff filed a petition alleging that on July 31, 1947, Samuel Langville, father of the defendant, had filed a boat lien for $130, and S. Irving Langville, a brother of the defendant, had filed a boat lien for $194.75. She alleged that said liens were invalid and in fraud of her rights, and prayed that they be stricken from the Boats' Lien Docket and that the sale be made free and clear of said liens. The Court signed a show cause order on this petition. On August 25, 1947, Samuel Langville and Irving Langville filed answers alleging that their liens were valid and bona

fide.  On November 20, 1947, there was a hearing upon the petition and answers.  The liens, sworn to on July 30, 1947 and recorded the following day were introduced in evidence, along with all of the papers and exhibits in the attachment case.  The Court did not hear evidence or pass upon the validity of the liens, but of its own motion, and upon the examination of these papers, held that the Circuit Court for Anne Arundel County had no jurisdiction to entertain the non-resident attachment based upon the decree of the Circuit Court No. 2 of Baltimore City, and that the stipulation agreement was merged in that decree.  For these and other reasons he thereupon quashed the writ of *fieri facias* and the attachment.  From that order the appeal comes here.

There were a number of procedural irregularities in the attachment proceeding.  Although the appellant contends that a voucher was filed along with the short note, the clerk denies that it was, and declined to include a purported copy in the record.  Compare *Johnson v. Stockham,* 89 Md. 358, 43 A. 920, Id. 89 Md. 368, 380, 43 A. 943.  That, however, would be a defect that could be cured by amendment (*Morgan v. Toot,* 182 Md. 601, 611, 35 A. 2d 641) and would be cured by verdict.  *Sugar Products Co. v. Kitzmiller,* 137 Md. 647, 653, 113 A. 345.  Although a verdict was found in the original proceeding, no judgment was entered thereon, and there was no verdict or motion filed in the case docketed against the garnishee.  It follows that the writ of *fieri facias* was prematurely issued.  These procedural defects are not, however, jurisdictional, although it is generally held that attachment proceedings must show upon their face substantial compliance with the statute.  *Gill v. Physicians & Surgeons' Bldg, etc.,* 153 Md. 394, 138 A. 674; *Coward v. Dillinger,* 56 Md. 59; *Mears v. Adreon,* 31 Md. 229; *Boarman v. Patterson and Israel,* 1 Gill. 372; *Bruce v. Cook,* 6 Gill. & J. 345.  If the non-resident attachment could not be brought in Anne Arundel County, it could not be brought elsewhere, because such a proceeding can only be brought where the gar-

nishee resides or has his place of business. *Sanitary Grocery Co. v. Soper,* 146 Md. 130, 126 A. 54. If the defect is jurisdictional, it may be raised for the first time on appeal (*Coward v. Dillinger, supra,*) or *ex mero motu. Trinidan Asphalt Mfg. Co. v. Standard Oil Co.,* 214 Mo. App. 115, 258 S. W. 64; 6 *C. J.* p. 433 n. 42, 7 *C. J. S., Attachment,* § 431.

For the purposes of this case we shall assume, without deciding, that the question posed by the action of the trial court in quashing the attachment proceeding was jurisdictional, and not merely a question of venue. Compare *Howell v. Bethlehem-Sparrows Point Shipyard,* 190 Md. 704, 59 A. 2d 680. We think, however, that the trial court was in error in holding that the Circuit Court of Anne Arundel County was without jurisdiction.

We are here dealing with a claim of indebtedness based upon a decree for support. We think the trial court was correct in holding that the stipulation agreement merged in the decree. The Circuit Court No. 2 of Baltimore City had jurisdiction of the non-resident defendant at the time it passed the decree, which was expressly made subject to further order of that court. The decree was an independent action of the chancellor, not merely confirmatory of the agreement. *Slacum v. Slacum,* 158 Md. 107, 110, 148 A. 226; *Kriedo v. Kriedo,* 159 Md. 229, 232, 150 A. 720. Nor could the agreement bind or limit the court's discretion, with regard to the best interests of the child. Code, art. 16, § 42. The decree created a debt, not an obligation to pay alimony. *Bauernschmidt v. Safe Deposit & Trust Co.,* 176 Md. 351, 4 A. 2d 712; *Knabe v. Knabe,* 176 Md. 606, 6 A. 2d 366, 124 A. L. R. 1317; *Bushman v. Bushman,* 157 Md. 166, 145 A. 488. Although such a debt could not be enforced by attachment for contempt, other remedies for its enforcement are available under Code, art. 16, § 211. The decree, however, was not a money decree. Before execution could be had upon it, further proceedings would be appropriate, under the established practice, "for the

purpose of converting overdue installments under the original decree into a lump sum so as to become a lien upon the property of the defendant and to facilitate execution or other action under Section 211, art. 16 of the Code." *Leberstein v. Leberstein,* 186 Md. 25, 45 A. 2d 753. Compare *Marshall v. Marshall,* 164 Md. 107, 116, 163 A. 874. Whether the Circuit Court No. 2 of Baltimore City retained jurisdiction of the nonresident defendant so as to permit the entry of a money decree *in personam,* against him, or whether any other remedy, by way of sequestration, execution or otherwise, (compare *Fetting v. Flanigan,* 185 Md. 499, 45 A. 2d 355) would be available under section 211, are questions we need not now consider. Section 16 of art. 16 of the Code seems to be limited to claims for alimony in the strict sense. In any event, a seizure under that section must precede the decree. *Keen v. Keen,* 191 Md. 31, 60 A. 2d 200.

The attachment statute relied upon in the instant case (Code, art. 9, § 4) requires that the "bond, account or other evidence of debt, by which the said debtor is so indebted", must be exhibited. The term "indebted" is not to be construed technically or in a strict legal sense. The claim may be based upon an implied contract (*Downs v. Baltimore,* 111 Md. 674, 692, 76 A. 861, 41 L. R. A., N. S., 255, 19 Ann. Cas. 644; *Alvey v. Hartwig,* 106 Md. 254, 265, 67 A. 132, 11 L. R. A., N. S., 678, 14 Ann. Cas. 250) ; or upon the transcript of a foreign judgment. *Cockey v. Milne's Lessee,* 16 Md. 200; *Bauernschmidt v. Safe Deposit & Trust Co., supra.* The appellee contends, however, that the decree of the Circuit Court No. 2 of Baltimore City cannot be enforced by any proceeding in a court of law, but only by further proceedings in the equity court.

In *Boyle v. Schindel,* 52 Md. 1, 7, an action of debt was brought in the Circuit Court for Washington County upon a money decree of the same court passed in an equity proceeding. It was held that the action would not lie. The Court said: "It is not because decrees of

courts of equity are not of equal dignity and finality with judgments at law, that they are not subjects of suits at law in this State, but because they are so equal and final they require no extrinsic aid from courts of law to give them full force and effect." The rule there announced was predicated upon the desirability of not multiplying equally efficacious remedies, and not upon any lack of jurisdiction in the law court.

In *Alvey v. Hartwig, supra* [106 Md. 254, 67 A. 137], a wife was granted a divorce in the Circuit Court of Baltimore City against a non-resident husband, who was not summoned and did not appear. The decree awarded custody of minor children to the wife, but did not award any alimony or support. Thereafter, the wife brought a non-resident attachment in Washington County, in which the husband appeared and contended that the plaintiff's rights, if any, should have been asserted in the original equity proceedings, and if she had any remedy at law, based upon a legal obligation to support, she was estopped from asserting it by reason of the decree awarding custody to her. On the question of estoppel, the court said: "As we view it, if the defendant had been summoned in the divorce case, it would be clear that the plaintiff would be barred in the case at bar." The court held that since the defendant was not summoned, and the equity court had no jurisdiction to enter a decree *in personam* for support, she was not estopped by the decree awarding custody. It was held that the attachment was properly brought upon the implied contract.

In the instant case the equity court had jurisdiction to make an award of support, based upon the appearance of the defendant through counsel and the stipulation filed, and did fix the amount stipulated. As suggested in the *Alvey* case, this would effectively bar an action upon the theory of implied contract, but it does not follow that the decree can only be enforced in the equity court. It is doubtful whether any remedy could be had in that court until the decree was converted into a money de-

cree, and whether service of process upon his solicitor in the original proceeding would suffice to support a decree *in personam,* are questions we leave open. *McSherry v. McSherry,* 113 Md. 395, 401, 77 A. 653, 140 Am. St. Rep. 428; compare *Borchert v. Borchert,* 185 Md. 586, 45 A. 2d 463, 162 A. L. R. 1078. Even if other remedies are available in the equity court, we think the remedy of a proceeding *in rem* by way of non-resident attachment, brought in the only jurisdiction where it could reach the property in question, should not be barred by the proceeding in the equity court which has not ripened into a money decree. The harsh doctrine of election of remedies is one that should not be extended to cases where there is no showing of prejudice. Compare *Petrillo v. Stein,* 184 Md. 644, 652, 42 A. 2d 675, and *Johnson v. Miles,* 188 Md. 455, 53 A. 2d 30. It is a defense that is not available unless pleaded. *Hertz v. Mills,* D. C., 10 F. Supp. 979, affirmed 4 Cir., 82 F. 2d 1010. Clearly, it does not go to the jurisdiction of the court.

For the reasons stated, we think the trial court was in error in quashing the attachment *sua sponte,* and that the court should permit the plaintiff to make such amendments and file such motions as may be requisite to dispose of the case on the merits. If and when judgment of condemnation is made final, the court should order the sale of the property attached and pass upon the validity and priority of any claims asserted against the proceeds. The property is in *custodia legis* under the original levy. *First National Bank v. Corporation Commission,* 161 Md. 508, 157 A. 748, 81 A. L. R. 1407; *Thomson v. Baltimore & S. Steam Co.,* 33 Md. 312.

*Order reversed with costs, and case remanded for further proceedings.*